(No. 7037. November 4, 1942.)

ARIS VARKAS and JIM VARKAS, copartners doing business under the firm name and style, "CHERRY BLOSSOM CANDY STORES", Appellants, v. SYRMO RIGAS VARKAS, Administratrix of the Estate of Nicholas Varkas, deceased, Respondent.

[130 Pac. (2d) 867.]

Rehearing denied December 1, 1942.

Frank E. Chalfant and Clarence L. Hillman for appellants.

Dale Clemons, J. F. Martin and Ariel L. Crowley for respondent.

AILSHIE, J.—The appellants, Aris Varkas and Jim Varkas, are the survivors of a business partnership known as the "Cherry Blossom Candy Stores", located in Boise. The original partnership, which had existed for a number of years, was composed of three brothers. March 20, 1941, one of the firm, Nicholas Varkas, died, leaving the other two, Aris and Jim, as the survivors of the partnership; and they continued to run and operate the business as had been done prior to the death of the brother. Respondent, Syrmo Rigas Varkas, the widow of Nicholas, was appointed administratrix of the estate of her deceased husband; and, subsequently, negotiations were carried on between her and the two surviving brothers, with reference to adjustments of the business as between the survivors and the administratrix of the estate. Negotiations were unsuccessful and, December 11, 1941, the appellants filed an action, setting forth the conditions of the estate and of the partnership and praying,

"For a declaration and adjudication of the rights and duties to the parties . . . . under Chap. 70, Idaho Session Laws, 1933, . . . . That the court assume and direct the administration of the partnership estate of 'Cherry Blossom Candy Stores,' as provided by Sec. 52-337, . . . . and . . . . for such other relief as the court may deem just and equitable in the premises."

Defendant filed a general demurrer to the complaint December 20, 1941; and, on January 20, 1942, filed an

answer and cross-complaint. Defendant's demurrer to the complain was sustained; and, no further action being taken thereon, the court proceeded to try the issues tendered by the cross-complaint and answer thereto. No judgment was entered on plaintiff's complaint; but judgment was entered on the cross-complaint, from which this appeal has been taken.

Preliminary to the main issues presented, respondent has made a motion to strike from the transcript (1) memorandum decision of the court; (2) stipulation for deposit of money with the clerk of the court; and (3) order for deposit of money. Technically, the motion was well taken because of the fact, that the documents mentioned are not properly a part of the judgment roll, under the provisions of Sec. 7-1107, I. C. A., and the decisions of this court announced thereunder. (*Clark v. Clark*, 58 Ida. 37, 69 P. (2d) 980; *Geist v. Moore*, 58 Ida. 149, 70 P. (2d) 403; *Stearns v. Graves*, 61 Ida. 232, 99 P. (2d) 955; *Baldwin v. Singer Sewing Machine Co.*, 48 Ida. 596, 284 Pac. 1027.)

In this case, however, a different factual situation confronts us. The "Memorandum Decision," by the trial judge, is a document of nine typewritten pages and covers every detail of fact in the case as presented by the pleadings and covered by the proofs, and states the finding and conclusion of the court thereon. This document, while designated "Memorandum Decision," may very well be taken as the findings of the court on the facts of the case; the name of the document is immaterial. (*Swank v. Sweetwater Irr. & P. Co.*, 15 Ida. 353, 354, 98 Pac. 297; *Consumers Co. v. Pub. U. Comm.*, 40 Ida. 772, 774, 236 Pac. 732.) Counsel for the respective parties must have felt the same way about the matter, since the memorandum was filed April 10th and, on April 15th, they stipulated, waiving findings of fact and conclusions of law. For these reasons, the motion to strike the memorandum decision will be denied and the document will be considered *as the findings of fact*. The stipulation for deposit of funds and order approving the same are immaterial and have no bearing on the main issue presented here.

On the merits of the case, it is first contended that the court erred in sustaining the general demurrer to the complaint. It was error for the court to sustain this demurrer. The complaint stated the situation confront-

ing the plaintiffs and involving the partnership affairs; likewise, the doubt, uncertainty and controversy existing between the adversary parties. Under the provisions of Chap. 70, 1933 Session Laws, known as the "Uniform Declaratory Judgment Act", appellants were entitled to the judgment of the court on the controversy involved.

In *State v. State Board of Education,* 56 Ida. 210, at 217, 52 P. (2d) 141, we said:

"The Declaratory Judgment Act (Chap. 70, 1933 Sess. Laws) contemplates some specific adversary question or contention based on an existing state of facts, out of which the alleged 'rights, status and other legal relations' arise, upon which the court may predicate a judgment 'either affirmative or negative in form and effect.' (Sec. 1 of Declaratory Act.)

"The questioned 'right' or 'status' may invoke either remedial or preventive relief; it may relate to a right that has either been breached or is only yet in dispute or a status undisturbed but threatened or endangered; but, in either or any event, it must involve actual and existing facts."

In *Sweeney v. American N. B.,* 62 Ida. 544, 115 P. (2d) 109, at 111, we said:

"The rule would seem to be well settled that in a proceeding for a declaratory judgment the court has jurisdiction both to construe the contract and to award damages." (Citing cases.)

(See also *State ex rel Diefendorf v. Idaho Egg Producers,* 59 Ida. 38, 80 P. (2d) 28; *Century Distilling Co. v. Defenbach,* 61 Ida. 192, 99 P. (2d) 56.)

█ In view of the action taken subsequent to the ruling on the demurrer, we do not think the appellants were prejudiced by the court's ruling on the demurrer. The cross-complaint and the answer to the cross-complaint tendered all the material issues that were presented by the original complaint of the appellants. The case was tried on these issues and finally submitted to the court and by the court decided under the issues and on the proofs presented thereunder.

There is no reason to suppose that the decision of the court would have been any different, had the case been tried upon the original complaint of the plaintiffs and the cross-complaint of the defendant and answer thereto.

Another assignment of error is, that the judgment is contrary to law, "for the reason that there is no allegation or proof that the respondent consented to a continuance of the business by the appellants, as required by Secs. 52-342, 52-341 (3), I. C. A."

The record shows that the business was of such a nature that, to have closed it or shut down the operations, would have been very injurious and would have undoubtedly greatly diminished its value. In the meanwhile, all parties were aware of the nature of the business, knew that it was being operated; and no demand was made by respondent or either of the appellants to close or cease operating; and we think, from the whole record, it may be assumed that everybody consented, either affirmatively or passively, to a continuation of the business. Appellants were in charge and were the actors. In this state of the record, we find no violation of the statute cited or any action on the part of respondent, in any way prejudicial to appellants.

In reference to the contention, that appellant, Aris Varkas, made certain personal advances to Nicholas, for which Aris should be compensated, we call attention to the finding and conclusion of the trial judge in reference thereto, indicating that that is not covered by this judgment:

"Cross defendants offered some testimony without objection, of out-of pocket advances made by Aris Varkas to pay firm bills, c.o.d. items, etc. No accurate records were kept of these advances, if made; and if made same are not pertinent to this suit. The counterclaim purports to be for overdrafts of the deceased partner made on the firm. The creditor's claim filed in the estate is entitled the claim of 'Cherry Blossom Candy Stores.' If Aris Varkas made any personal advances to the deceased directly, same would create a personal debt to him. This suit involves only the interest of the estate of the deceased partner in the business, not the determination of the individual interests of the surviving partners or their respective claims against the business."

The evidence was desultory, unsatisfactory and much of it rested in the memory alone of the parties to the action. There is evidence, however, in the record, supporting the computations made and conclusions reached by the trial judge.

Judgment affirmed. Costs to respondent.

Givens, C.J., and Holden, J., concur.

Budge, J., sat at the hearing but took no part in the decision.